UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAUL DUKES, et al.,

               Plaintiffs,

v.

HILTON HOTEL EMPLOYER LLC, et al.

               Defendants.

No. 2:25-cv-02543-DJC-CKD

AMENDED ORDER

Plaintiffs Paul Dukes and Veronica Sanchez filed this individual and representative action in the County of San Joaquin Superior Court and Defendant Hilton Hotel Employer LLC removed it to this Court asserting diversity and federal question jurisdiction.  Plaintiffs now move to remand, contending there is no federal subject matter jurisdiction.  For the reasons stated below, Plaintiffs' Motion to Remand is DENIED.

////

////

////

////

////

1

**BACKGROUND**

On August 1, 2025, Plaintiffs Paul Dukes and Veronica Sanchez ("Plaintiffs") filed an individual and representative action in the San Joaquin Superior Court against Defendant Hilton Hotel Employer LLC ("Hilton") and DOES 1 to 20.  (*See* Compl. (ECF No. 1, Exh. A).)  Plaintiffs seek damages for Hilton's alleged failure to pay overtime wages, sick leave violations, failure to provide meal periods, failure to provide accurate wage statements, illegal tip pooling, conversion, violation of California's Unfair Competition Law, and civil penalties pursuant to the Private Attorneys General Act.  (*Id*. ¶ 1.)  Plaintiffs and other aggrieved employees allegedly worked for Hilton as non-exempt employees in California and were paid on an hourly basis.  (*Id*. ¶ 11.)  In their prayer for relief, Plaintiffs specify that in addition to all penalties, they also seek compensatory damages, unpaid wages, injunctive relief, punitive damages, and reasonable attorneys' fees, in addition to other relief.  (*Id*. at Prayer for Relief.)  Plaintiff Dukes was employed by Hilton from approximately February 2022 to present, and has worked at his current location in Anaheim, California, as a Banquet Captain since approximately December 2022.  (Ritchie Decl. (ECF No. 16-1) ¶ 3.)  Plaintiff Sanchez was employed by Hilton from approximately February 2007 to present and also worked as a Banquet Captain during her employment.  (*Id*.)  During their employment, Plaintiffs were both members of Unite Here! Local 11, a union representing employees at the hotel, and were subject to a collective bargaining agreement.  (*Id*. ¶ 4.)

On September 4, 2025, Hilton removed the matter to this Court pursuant to diversity and federal question jurisdiction.  (*See* Not. of Removal (ECF No. 1).)  Hilton asserts that diversity jurisdiction is proper because the amount in controversy for Plaintiffs' individual claims exceeds $75,000 and that federal question jurisdiction is also present because Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.*, preempts several of Plaintiffs' Labor Code and PAGA claims.  (*See*

*generally id.*)[1]  On October 1, 2025, Plaintiffs filed a Motion to Remand.  (Mot. to Remand (ECF No 11).)  The Motion is fully briefed.  (Opp'n (ECF No. 16); Reply (ECF No. 18).)  On October 6, 2025, Hilton filed a notice of related cases.  (ECF No 13.)[2]  On December 15, 2025, the Court took the Motion to Remand under submission pursuant to its authority under Local Rule 230(g).  (ECF No. 22.)

**LEGAL STANDARD**

A case may be removed to federal court if that court would have jurisdiction over the matter.  *See* 28 U.S.C. § 1441; *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).  Subject matter jurisdiction exists in civil cases involving a federal question or diversity of citizenship.  28 U.S.C. §§ 1331, 1332.  To support diversity jurisdiction, the amount in controversy in the case must exceed $75,000, 28 U.S.C. § 1332(a), and there must be complete diversity between the parties, meaning that "each plaintiff must be diverse from each defendant."  *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1004 (9th Cir. 2001).  Federal question jurisdiction is met where the action "aris[es] under the Constitution, laws, or treaties of the United States."  *See* 28 U.S.C. § 1331.  "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (citations omitted).

---

[1]  The parties agree that there is complete diversity between them.  The Court notes that Hilton filed a Corporate Disclosure statement under Federal Rule of Civil Procedure 7.1(a)(1) instead of 7.1(a)(2) as a party to a diversity case.  (ECF No. 2.)  Ordinarily, given that Hilton Hotels is a limited liability company, limited liability companies are citizens of every state of which their members are citizens.  *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  Here, the Notice of Removal alleges the citizenship of Hilton Hotels LLC's sole member, which is Hilton Employer Inc.  Hilton Employer Inc. is a Delaware corporation and has its headquarters and principal place of business in Virginia.  (NOR ¶ 12.)  Thus, the citizenship of Hilton Hotels LLC is Delaware and Virginia.  (*Id.*)  As Plaintiffs are citizens of California (Compl. ¶¶ 4–5), the parties are diverse.

[2]  Pursuant to Local Rule 123, counsel for Hilton filed a notice of related cases alerting the Court to pending matters in state and federal court that involve some of the same parties and the same or similar claims.  (*See generally* ECF No. 13.)  None of the related cases are pending in the Eastern District of California.

A defense is not part of a plaintiff's properly pleaded statement of his or her claim. *Id.* (citations omitted).

"A motion to remand is the proper procedure for challenging removal." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing 28 U.S.C. § 1447(c)). Generally, courts "strictly construe the removal statute against removal jurisdiction." *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1068 (9th Cir. 2021).

The party asserting federal subject matter jurisdiction bears the burden of establishing its existence. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam). A removing party may rely on a chain of reasoning that includes assumptions. *Rosenwald v. Kimberly-Clark Corp.*, 152 F.4th 1167, 1176 (9th Cir. 2025). These assumptions must reflect more than "mere speculation and conjecture." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Such assumptions require "some reasonable ground underlying them," *id.* at 1199, but they "need not be proven." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). Assumptions may be reasonable if they are "founded on the allegations of the complaint." *Id.* at 925.

The Ninth Circuit has explained that a plaintiff's motion to remand is "the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014). As such, a motion to remand may be based on either a facial attack or a factual attack on the defendant's jurisdictional allegations. *See id.* In a facial attack, the challenger takes the allegations in the complaint as true but challenges whether those allegations are sufficient to invoke jurisdiction. *Safe Air for Everyone v. Meyer*, 373

4

F.3d 1035, 1039 (9th Cir. 2004). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Meyer*, 373 F.3d at 1039. A factual attack typically introduces evidence outside the pleadings, and the party asserting federal jurisdiction must then "support [their] jurisdictional allegations with 'competent proof,'" under "the same evidentiary standard that governs in the summary judgment context," *Leite*, 749 F.3d at 1121 (citations omitted). "[I]f the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Id.* (citations omitted).

## DISCUSSION

Plaintiffs initially argue remand is required for two reasons: 1) that Hilton relies on unreasonable assumptions to establish the amount in controversy for purposes of diversity jurisdiction, and 2) that federal question jurisdiction is lacking because Plaintiffs' complaint does not raise any claims that are preempted by a qualifying collective bargaining agreement. (*See generally* MTR.) In its Opposition, Hilton contends its assumptions for the amount in controversy are both reasonable and supported by evidence and that the Court has original jurisdiction over several of Plaintiffs' claims that are preempted by the Labor Management Relations Act. (*See generally* Opp'n.) In their Reply, Plaintiffs maintain that federal question jurisdiction is lacking but decline to further address Hilton's arguments presented in the Opposition regarding the amount in controversy. (*See generally* Reply.)

### I. Motion to Remand

#### A. Request for Judicial Notice

Hilton requests the Court take judicial notice of certain documents, Exhibits A through G, in support of its Opposition to Plaintiffs' Motion. Exhibits A through G are

5

public filings in state and federal court that were handled by Plaintiffs' counsel in other wage-and-hour cases.  (*See* RJN (ECF No. 17), Exhs. A–G.)

The Court grants Hilton's request.  Court records are appropriate subjects for judicial notice as they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

### B. Amount in Controversy

In their state court complaint, Plaintiffs do not enumerate their claimed damages.  "Where this allegation is lacking, a removing defendant need only allege in its notice of removal that the amount in controversy is met."  *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citing *Dart v. Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88–89 (2014)).  But "[w]hen a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the . . . jurisdictional threshold."  *Id.* (citation omitted).  "Both parties may submit evidence supporting the amount in controversy before the district court rules."  *Id.* (citation omitted).  This proof can include affidavits, declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal."  *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citations omitted).  The defendant may also rely on "reasonable assumptions underlying the defendant's theory of damages exposure."  *Id.* at 1198.

The Court finds that Plaintiffs have mounted a factual attack against Hilton as they contest the truthfulness of Hilton's jurisdictional allegations and criticize the alleged lack of evidentiary support provided with the Notice of Removal.  (MTR at 12–15.)  As Hilton points out, however, the burden to provide "competent proof" arises only after Plaintiffs mount a factual attack.  *See Harris*, 980 F.3d at 700–01.  Accordingly, Hilton now has "the burden of proving by a preponderance of the evidence that its assumptions were reasonable."  *Id.*

In the Motion, Plaintiffs challenge certain calculations in the Notice of Removal regarding gratuities, potential attorneys' fees recovery, and punitive damages, but they also concede that Hilton has established at least $31,105.50 in controversy as to the remaining claims.  (MTR at 15–16.)  Specifically, Plaintiffs do not contest Hilton's calculations regarding unpaid overtime, meal periods, and wage statements itemized in the Notice of Removal and related PAGA penalties.  (*See* NOR ¶ 44; *see* MTR at 12–16.)  While $31,105.50 thus appears to be undisputed, the Court finds that Hilton improperly evaluates the share of PAGA penalties throughout the Notice of Removal and will adjust the PAGA penalties as explained below.

### 1.  Calculation of PAGA Penalties

Hilton contends that Plaintiffs have put $5,300 in issue for PAGA penalties for each of the unpaid overtime, meal period, wage statement, and unpaid gratuities claims.  (*See* NOR ¶¶ 23, 29, 34, 41.)  Hilton conservatively assumes that Plaintiffs are seeking only initial PAGA penalties, (*id.* ¶ 23 n.1), and declines to address PAGA penalties for the sick leave claim, (*id.* ¶ 45).  Proceeding by Hilton's calculation, the total amount in PAGA penalties is at least $21,200, not including the sick leave claim.

In *Urbino v. Orkin Services of California, Inc.*, the Ninth Circuit explained that civil penalties arising from PAGA actions cannot be attributed to a single plaintiff for purposes of calculating the amount in controversy under § 1332 (*i.e.*, the penalties could not be "aggregated" to a single plaintiff) because PAGA is a representative action brought on behalf of the California Labor and Workforce Development Agency.  726 F.3d 1118, 1122–23 (9th Cir. 2013).  In representative actions, claims cannot be aggregated unless they "unite to enforce a single title or right in which they have a common and undivided interest."  *Id.* at 1122 (quoting *Snyder v. Harris*, 394 U.S. 332, 335 (1969)).  When the defendant owes individual obligations to the group rather than as a collective obligation, the right is not a common and undivided interest.  *Id.*; *see also Gibson v. Chrysler Corp.*, 261 F.3d 927, 944 (9th Cir. 2001) (internal quotations omitted) ("Aggregation is appropriate only where a defendant owes an obligation to

the group of plaintiffs as a group and not to the individuals severally."). The *Urbino* Court concluded PAGA claims that address violations of California Labor Code involve injuries unique to each employee, and employers do not owe an obligation to employees "as a group." *Urbino*, 726 F.3d at 1122. Accordingly, defendants cannot aggregate civil penalties under PAGA actions to a single plaintiff to meet the jurisdictional threshold. *Id.* While Hilton appears to abide by *Urbino* and proffers only the PAGA penalties specific to the named Plaintiffs, Hilton fails to address whether 100% of those PAGA penalties or a lesser amount can be factored into the amount in controversy.

District courts have been divided on whether to consider 100% of a plaintiff's potential PAGA penalties in determining the amount in controversy, or whether it should look to a plaintiff's 35% share alone, as aggrieved employees are statutorily entitled to only 35% of the PAGA penalties while the Labor Workforce Development Agency is entitled to 65%.[3] Cal. Lab. Code § 2699(m). In the absence of controlling Ninth Circuit authority on the specific issue of how to calculate the share of the PAGA penalty for purposes of the amount in controversy, the Court will look to the named Plaintiffs' 35% share alone, mindful that the Labor Workforce Development Agency is "only a real party in interest, not a party to the suit and 'courts must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of the real parties to the controversy.'" *Higginbotham v. S.E. Emp. Leasing Servs., Inc.*, No. 2:20-cv-00575-KJM-DB, 2020 WL 5535421, at *3 (E.D. Cal. Sept. 15, 2020) (quoting *Urbino*, 726 F.3d at 1122–23 (9th Cir. 2013). Turning to the PAGA share calculation, 35% of $5,300 is $1,855 per claim.

---

[3] *Compare Lopez v. Ace Cash Express*, No. LA CV11-07116-JAK, 2015 WL 1383535, at *5 (C.D. Cal. Mar. 24, 2015); *Coffin v. Magellan HRSC, Inc.*, No. 19-cv-2047-BAS-NLS, 2020 WL 773255, at *5 (S.D. Cal. Feb. 18, 2020); *Steenhuyse v. UBS Financial Servs., Inc.*, 317 F. Supp. 3d 1062, 1069 (N.D. Cal. 2018) *with Patel*, 58 F. Supp. 3d at 1047; *Ruiz v. Snyder's-Lance, Inc.*, No. 24-cv-04053-RFL, 2024 WL 4295280, at *2 (N.D. Cal. 2024).

Accordingly, for purposes of Plaintiffs' 35% share of the PAGA penalties for the unpaid overtime, meal period, wage statement, and unpaid gratuities claims, $7,420 (or $1,855 times 4) may count toward the amount in controversy.

### 2. Unpaid Gratuities and Conversion Claims

In the Notice of Removal, Hilton estimates that the amount in controversy arising from Plaintiffs' fifth and sixth claims for relief (illegal tip pooling and conversion claims), including Plaintiffs' related claim for civil penalties under PAGA, is $46,027.00. (NOR ¶ 36.)  In the Opposition, Hilton includes an estimate for emotional distress damages, bringing the total to $66,027.00.  (Opp'n at 20.)  Because the Court previously addressed the PAGA penalty for unpaid gratuities, it will not consider it here.

### i.  Compensation for Unpaid Gratuities

Hilton first assumes that Plaintiffs are seeking their pro-rata portion of the alleged managerial tip pool that was distributed to managers.  (NOR ¶ 36.)  In their Complaint, Plaintiffs allege that 100% of the tip pool should be distributed to non-managerial employees, including Plaintiffs, for banquet services provided by "employees assigned to the Event." (Compl. ¶ 17.)  Plaintiffs allege that Hilton improperly "takes 15% of these tips and distributes them to managerial employees with supervisory authority over Plaintiffs and other aggrieved employees." (*Id.*)  Based on these allegations, Hilton assumes that Plaintiffs are seeking a proportionate share, or 17.64%, of the unpaid tip pool monies that were allegedly given to managerial employees.[4]  Hilton further reduces this percentage to a more conservative assumption of 8.82%.  (NOR ¶ 37.)

Hilton next explains that Dukes was paid $95,000 for banquet-related payments and Sanchez was paid $140,000 for banquet-related payments during the relevant time period.  Multiplying these numbers by 8.82% gives a sum of $20,727 for the

---

[4] Hilton's calculation is 15% divided by 85% equals 17.64%.  (NOR ¶ 37.)

alleged unpaid gratuities.  (NOR ¶ 38.)  Plaintiffs challenge these figures in their Motion to Remand, but Hilton substantiates them in its Opposition and the supporting Declaration of Valerie Ritchie.  (Opp'n at 15.)  "[I]n evaluating whether a removing defendant has met its burden, it is proper for courts to consider which party has access to or control over the records and information required to determine whether the amount in controversy requirement is met."  *Letuligasenoa v. Int'l Paper Co.*, No. 5:13-CV-05272-EJD, 2014 WL 2115246, at *5 (N.D. Cal. May 20, 2014).  Thus, Hilton is "in the best position to adduce evidence regarding the . . . wages" of their employees.  *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1130 (C.D. Cal. 2010).  Here, Hilton's declarant Ritchie states that after reviewing payroll data from the relevant time period, "Plaintiff Paul Dukes received approximately $97,058.64 in 'Banquet Service Charge' payments and Plaintiff Veronica Sanchez received more than $146,177.40 in 'Banquet Service Charge' payments."  (Ritchie Decl. ¶ 14.)  While Plaintiffs contest that their Complaint does not specify the frequency of alleged illegal tip pooling violations, the Ritchie declaration also states that Plaintiffs received Banquet Service Charge payments in each of the pay periods during the PAGA period.  (Ritchie Decl. ¶ 14.)  Given that the Complaint alleges that Plaintiffs "have their tip amounts depleted because [Hilton] unlawfully includes managerial staff in a tip pool for banquet services[,]" (Compl. ¶ 16), it is reasonable to assume that any payments related to banquet events also involves the tip pool.  Indeed, the Complaint explicitly provides that "[a]ll food and beverages prices are subject to a . . . gratuity/service charge" and "a portion of this combined charge . . . is a gratuity and will be fully distributed to employees assigned to the Event."  (Compl. ¶ 17.)  The Court finds that Hilton's calculations and assumptions satisfy the preponderance of the evidence standard and adds $20,727 for unpaid gratuities to the amount in controversy.

### ii.  Punitive Damages for Conversion Claim

"It is well established that punitive damages are part of the amount in controversy in a civil action."  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001).  In assessing punitive damages, courts have used a ratio of 1:1 between punitive and economic damages for purposes of estimating the amount in controversy.  *Zapata Fonseca v. Vigo Imp. Co.*, No. 5:16-cv-02055-EJD, 2016 WL 6249006, at *2 (N.D. Cal. Oct. 26, 2016); *see also Guglielmino v. McKee Foods Corp.*, 506 F.3d 696 (9th Cir. 2007) (affirming denial of remand after inclusion of "conservative[ ] estimate" of 1:1 ratio for punitive damages as to economic damages in wage and hour matter).  Here, Plaintiffs seek punitive damages related to their conversion claim and repeat the request in their Prayer for Relief.  (Compl. ¶ 66; Prayer for Relief.)  The Court finds a 1:1 ratio to be a conservative estimate and accepts Hilton's $20,000 calculation for punitive damages as to the conversion claim.

### iii. Emotional Distress Damages for Conversion Claim

Plaintiffs also seek emotional distress damages for their conversion claim. (Compl. ¶ 67.)  "Courts may properly consider emotional distress damages as part of the amount in controversy for jurisdictional purposes."  *Charles v. Transdev Servs., Inc.*, No. 2:23-cv-02011-ODW-AFM, 2023 WL 4411027, at *3 (C.D. Cal. Jul. 7, 2023).  Hilton suggests a 1:1 ratio in the Opposition, or $20,000, citing to *Garfias v. Team Industrial Services, Inc.*  No. 2:17-cv-04282-JAK-AGR, 2017 WL 4512444, at *5 (C.D. Cal. Oct. 10, 2017), and *Adkins v. J.B. Hunt Transportation, Inc.*, 293 F. Supp. 3d 1140, 1146–47 (E.D. Cal. 2018).  Plaintiff does not oppose the proposed amount.  The Court agrees that this amount is conservatively reasonable.   The Court credits the proposed $20,000 toward emotional distress damages for the conversion claim.

With the foregoing calculations, the jurisdictional threshold for diversity jurisdiction is satisfied as the amount in controversy exceeds $75,000.

The chart below provides a summary of the amount in controversy calculations:

| TYPE OF RELIEF SOUGHT | AMOUNT IN CONTROVERSY |
|---|---|
| **Unpaid Overtime Claims (First and Eighth Causes of Action)** | Original: $12,813.50 |
| Original PAGA Penalty | -   $5,300 |
| Revised PAGA Penalty | + $1,855 = **$9,368.50** |
| **Meal Period Claims (Third and Eighth Causes of Action)** | Original: $8,692 |
| Original PAGA Penalty | -   $5,300 |
| Revised PAGA Penalty | + $1,855 = **$5,247** |
| **Wage Statement Claims (Fourth and Eighth Causes of Action)** | Original: $9,600 |
| Original PAGA Penalty | -   $5,300 |
| Revised PAGA Penalty | + $1,855 = **$6,155** |
| **Unpaid Gratuities Claims (Fifth and Sixth Causes of Action)** | Original: $46,027 |
| Revised Claim (see *supra* at 9) | $20,727 |
| Revised PAGA Penalty[5] | + $1,855 = **$22,582** |
| **Punitive Damages for Conversion** | **$20,000** |
| **Emotional Distress Damages** | **$20,000** |
| **Total Amount in Controversy** | **$83,352.50** |

Accordingly, Hilton has established there is at least $75,000 in controversy and thus there is diversity jurisdiction under § 1332(a).  The Court need not consider

---

[5]  While Hilton includes $5,300 in PAGA penalties as part of the unpaid gratuities claim amount in the Notice of Removal for a total value of $46,027 (NOR at ¶ 41), in its Opposition, it provides a revised number for the unpaid gratuities without specifying whether it also includes the $5,300 PAGA penalty. Thus, the Court will add the revised PAGA penalty separately for the unpaid gratuities.

attorneys' fees or whether there is federal question jurisdiction.  Plaintiff's Motion to Remand is therefore DENIED.

### CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' Motion for Remand (ECF No. 11) is DENIED.

IT IS SO ORDERED.

Dated:   **April 20, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

13